UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TAMARA F.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-1343-MLP

ORDER

## I.     INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in evaluating the medical opinion evidence. (Dkt. # 14.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.     BACKGROUND

Plaintiff was born in 1965. AR at 211. Plaintiff applied for benefits in September 2015, alleging disability due to osteoarthritis and mental impairments beginning on November 11, 2014. *Id.* An ALJ held a hearing in February 2018 and issued a decision finding Plaintiff not disabled. *Id.* at 15-29. The Appeals Council denied Plaintiff's request for review, making the

ORDER - 1

ALJ's decision the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

# IV. DISCUSSION

## A. The ALJ Erred in Evaluating the Medical Opinion Evidence

Plaintiff challenges the ALJ's assessment of four medical opinions, each of which the Court will address below.

### 1. *Legal Standards*

Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). State agency physician opinions may constitute substantial evidence when that opinion is "consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

### 2. *Steve Bruce, M.D.*

Plaintiff argues the ALJ failed to provide an explanation for rejecting the opinion of his treating physician, Dr. Bruce, from a 2017 clinic visit note. (Dkt. # 14 at 3.) Plaintiff cites to Dr. Bruce's opinion that Plaintiff's standing and walking tolerance was limited and her ability to work was limited to light to sedentary. (Dkt. # 14 at 3 (citing AR at 902).) Dr. Bruce also stated Plaintiff had limitations regarding daily use of her right shoulder and that she would not tolerate job activities that involved repetitive lifting, reaching, or overhead positioning of her right arm. AR at 902. The ALJ did not address or assign any specific weight to Dr. Bruce's opined limitations.

The Commissioner argues that although the ALJ did not specifically address his opinion, he did discuss Dr. Bruce's clinical notes and the longitudinal record. (Dkt. # 18 at 3.) The Commissioner also argues the ALJ's limitation to light exertional level work is generally consistent with Dr. Bruce's "light to sedentary" estimation and that the RFC's limitations that Plaintiff cannot perform overhead work, should avoid constant right-hand movement, and cannot frequently lift more than ten pounds with her right arm was consistent with Dr. Bruce's opinion. (*Id.*)

An ALJ errs when he rejects a medical opinion by ignoring it or by asserting, without explanation, that other evidence is more persuasive. *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). Further, the Ninth Circuit has concluded that it is not harmless error for the ALJ to fail to discuss a medical opinion. *Hill v. Astrue,* 698 F.3d 1153, 1160 (9th Cir. 2012)) (*citing* 20 C.F.R. § 404.1527(c) (noting that this Ruling requires the evaluation of "every medical opinion" received)).

Here, the ALJ's decision only referenced the portion of Dr. Bruce's notes that states Plaintiff had early arthritic changes which could continue to deteriorate and that she was observed to walk with a slow steady gait with mild pain and full function ranges of motions. AR at 23 (citing *id.* at 901). The decision does not address any of Dr. Bruce's opined limitations or provide any reasons for rejecting such limitations. For example, the RFC states Plaintiff can "frequently reach overhead with the right upper extremity" which conflicts with Dr. Bruce's opinion that Plaintiff cannot tolerate job activities that involved repetitive lifting, reaching, or overhead positioning of her right arm. While it is the responsibility of the ALJ to resolve ambiguities and conflicts in the medical evidence (*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)), the ALJ must actually articulate how he resolves such conflicts.

The Commissioner also asserts the ALJ found that any greater limitations suggested by Dr. Bruce were inconsistent with the record because the ALJ's decision discusses Plaintiff's impairments and cites to other medical opinions that suggest lesser limitations. (Dkt. # 18 at 3-4.) However, the ALJ did not address Dr. Bruce's opined limitations and therefore the ALJ's general discussion of other medical evidence is not a sufficient reason for rejecting Dr. Bruce's opinion. Accordingly, the ALJ erred in failing to evaluate Dr. Bruce's medical opinion.

3. Mark Hoffman, M.D.

Plaintiff's treating physician, Dr. Hoffman, provided multiple letters on Plaintiff's behalf regarding her ability to work. In February 2014, Dr. Hoffman opined Plaintiff should reduce her work shifts to four days per week, eight hours a day. AR at 1221. In April 2014, Dr. Hoffman opined Plaintiff needed to work four days in a row, with three days off in a row, in order to rest and recover between work shifts. *Id.* at 1205. In May 2014, Dr. Hoffman opined Plaintiff did not need surgery at that time, but that she could work four days in a row with three days off to rest. *Id.* at 1201. He further opined she was restricted to lifting 40 pounds and should be allowed extra help and rest when her neck pain worsened at work, which he indicated she was already receiving at work. *Id.*

The ALJ assigned Dr. Hoffman's May 2014 opinion only some weight because it was four years old and Dr. Hoffman did not indicate how long the opined restrictions would last. AR at 25. The ALJ also found it was inconsistent with the opinions of Dr. Gaffield and the State agency consultants. *Id.* Plaintiff argues that the ALJ failed to provide any reasons for rejecting Dr. Hoffman's opinion that Plaintiff needed to work four days on with three days off or that Plaintiff would need extra help at work. (Dkt. # 14 at 4-5.)

As Plaintiff notes, Dr. Hoffman's opinion was four years old at the time the ALJ wrote his decision, however, the opinion was made just six months before Plaintiff's alleged onset date of disability. (Dkt. # 14 at 4.) Although medical opinions that predate alleged onset dates are of limited relevance, Dr. Hoffman's opinion does have some relevance, especially given the proximity to the alleged onset date. *Carmickle v. Comm'r of Soc. Sec. Admin,* 533 F.3d 1155, 1165 (9th Cir. 2008); *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). Further, the fact that Dr. Hoffman did not provide an opinion regarding the duration of Plaintiff's limitation is not a sufficient reason as neither did most of the other medical opinions, including Dr. Gaffield's opinion which the ALJ gave considerable weight.

The ALJ's last reason for giving Dr. Hoffman's opinion only some weight is that it is inconsistent with Dr. Gaffield and the State agency consultants' opinions. However, their opinions were provided in 2016, approximately two years after Dr. Hoffman's opinion, which could account for inconsistencies. Because this matter is being remanded for the ALJ to reevaluate Dr. Bruce's opinion, the ALJ should also reevaluate Dr. Hoffman's opinion.

        4.     Eric Smith, M.D.

Plaintiff challenges the ALJ evaluation of two opinions by her workplace compensation evaluator, Dr. Smith.[1] In September 2016, Dr. Smith provided a letter opining he did not believe Plaintiff could effectively return back to work at even a sedentary exertional level. AR at 788-89. The ALJ gave this letter little weight because the ability of Plaintiff to work is a decision reserved for the Commissioner. *Id.* at 25. The ALJ also found the opinion was vague as to

---

[1] The Commissioner argues Dr. Smith should be considered an examining provider rather than a treating provider because Plaintiff visited him for assistance with her worker's compensation claim. (Dkt. # 18 at 6.) Plaintiff argues Dr. Smith is a treating provider because his letter specifically states it is a synopsis of the treatment he performed. (Dkt. # 19 at 6.) Regardless, the ALJ was required to provide specific and legitimate reasons for rejecting his opinions.

ORDER - 6

whether Dr. Smith meant Plaintiff could not perform her former work or work at all. *Id.* Lastly, the ALJ found the opinion was inconsistent with the opinions of Dr. Gaffield and the State agency consultants. *Id.*

While the ALJ accurately noted that the determination of whether Plaintiff can work is reserved for the Commissioner (AR at 25 (citing 20 CFR 404.1520b(c)(3))), this does not relieve the ALJ of his obligation to provide specific and legitimate reasons based on substantial evidence in the record for rejecting Dr. Smith's opinions. *See* SSR 96-5p, 1996 WL 374138, at *2 (July 2, 1996) (the ALJ is required to "carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."). Dr. Smith's opinion is also not vague with regard to whether Plaintiff could not perform past work or any work at all. Dr. Smith opined that he did not see Plaintiff "effectively returning to the workplace at even the most sedentary work for an eight hour period." *Id.* at 788. The vocational expert ("VE") testified that Plaintiff's former work was categorized as a composite job of cafeteria attendant, light exertional work level, and kitchen helper, medium exertional work level. *Id.* at 76-77, 79. Dr. Smith's opinion therefore indicates Plaintiff cannot return to any workplace setting, even at a lighter, sedentary exertional level work environment.

Plaintiff also challenges the ALJ's evaluation of Dr. Smith's assessment in April 2017. Dr. Smith opined Plaintiff could only stand 10-15 minutes at a time, could stand less than two hours in a work day, and could sit at least six hours in a work day. AR at 800. Dr. Smith also opined Plaintiff would need to take breaks one to three times per day due to pain and could only occasionally lift and carry ten pounds and rarely lift and carry twenty pounds. *Id.* at 800-01. Further, Dr. Smith opined Plaintiff would be off task more than twenty-five percent of the time due to her mental impairments. *Id.* at 802.

The ALJ gave Dr. Smith's April 2017 opinion little weight because it lacks reference to specific evidence to explain why he checked each box of the assessment and it is inconsistent with the medical record, for example, Dr. Smith suggests Plaintiff has little manipulative function (AR at 801) despite an earlier finding in the medical record that Plaintiff had a good outcome for her carpal tunnel syndrome (*id.*at 756). *Id.* at 25. However, this check-box form is not the only medical evidence from Dr. Smith, rather the record contains other medical reports from Dr. Smith regarding Plaintiff's impairments dating back to at least 2014 (*see, e.g., id.* at 352-53, 354-56, 361-69, 481-85, 634-36, 785-94). *See Garrison*, 759 F.3d at 1013 (when the opinion expressed in a check-the-box form is based on significant experience with a claimant and supported by numerous records, it is entitled to more weight than an otherwise unsupported and unexplained check-the-box-form.) Further, the record cited by the ALJ regarding Plaintiff's carpal tunnel syndrome was from May 2016, almost a year before Dr. Smith conducted his evaluation.

The ALJ's last reason for discounting Dr. Smith's opinions is that the ALJ found they were not consistent with the opinions of Dr. Gaffield and State agency consultants. AR at 25. Dr. Gaffield conducted s physical consultative examination of Plaintiff in May 2016. *Id*. at 751-58. He opined Plaintiff was capable of standing and walking for six hours in an eight-hour day, could sit for an entire workday, and could lift and carry at a light exertional level. *Id.* The ALJ assigned Dr. Gaffield's opinion considerable weight because he found it was internally consistent with his examination of Plaintiff and consistent with the State agency consultants who considered Plaintiff's medical record. *Id.* at 24-25. State agency consultant, Dr. Irwin, opined Plaintiff was capable of performing work at a light exertional level with additional manipulative and reaching restrictions. *Id.* at 112-133. The ALJ gave Dr. Irwin's opinion considerable weight

although the ALJ found the additional restrictions vague. *Id.* at 25-26. The ALJ also gave Dr. Irwin's opinion additional weight because it was consistent with Dr. Gaffield's opinion. *Id.* at 26.

Although the ALJ properly identified a conflict between Dr. Smith's opinions and the opinions of Drs. Gaffield and Irwin, the ALJ was required to explain how he resolves such conflicts. Merely stating the opinions are inconsistent is not a sufficient or legitimate reason to discount Dr. Smith's opinions. Because the ALJ did not provide specific and legitimate reasons for discounting Dr. Smith's opinion, the ALJ should reevaluate Dr. Smith's opinion on remand.

    5. *Ellen Walker, M.D.*

Dr. Walker, an examining physician, conducted a psychological examination of Plaintiff in May 2016. Dr. Walker opined Plaintiff could understand and remember simple job tasks but may struggle with more complex tasks. AR at 749. Dr. Walker opined Plaintiff talked incessantly and was off-topic during the examination, which may result in some interpersonal challenges in a work setting. *Id*. Further, Dr. Walker opined Plaintiff may have difficulty in a work setting if there are changes or she is pressured to work in a rapid pace due to her panic attacks. *Id.* Dr. Walker concluded that Plaintiff would struggle at that time to stay in a fulltime job primarily because of chronic pain issues and that her ability to maintain regular work attendance was markedly impaired. *Id.*

The ALJ assigned Dr. Walker's opinion some weight but declined to adopt her opinion regarding Plaintiff's ability to maintain work attendance because the ALJ found Dr. Walker based this portion of her opinion entirely on Plaintiff's self-reports. AR at 24. The ALJ thus declined to adopt any statements regarding Plaintiff's attendance. *Id.* The ALJ further found Dr. Walker's opinion was partially consistent with the opinions of State agency consultants. *Id.*

An ALJ may reject a medical source's statement opinion if it is "based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti,* 533 F.3d at 1041 (citations omitted). With regard to Plaintiff's physical impairments, it appears Dr. Walker based her opinion on Plaintiff's self-reports, which the ALJ properly discounted and Plaintiff did not challenge on appeal. Dr. Walker's opinion states Plaintiff provided information on her history and functioning. AR at 746. In both the history and functioning portions of the opinion, Plaintiff described her physical impairments including pain, limitations in lifting and reaching, and her difficulties in being able to accomplish physical tasks. *Id.* at 747. In the medical source statement portion of Dr. Walker's opinion, Dr. Walker described Plaintiff's self-reports, including that "[Plaintiff's] physical health issues appear to [sic] the main hindrance in a return to work at this time, with reported chronic pain and weakness". *Id.* Dr. Walker then opined Plaintiff would struggle with getting to and staying at a fulltime job "mostly because of chronic pain issues" and that Plaintiff's ability to maintain regular work attendance is markedly impaired. *Id.* at 749.

It appears that although Dr. Walker reviewed Plaintiff's medical records and performed a Mental Status Exam, a Wechsler Memory Test, and a Trail Making Test to evaluate Plaintiff's mental impairments, her opinions regarding Plaintiff's physical impairments are based on Plaintiff's self-reports. This is further supported by the fact that while Dr. Walker referenced Plaintiff's self-reports with regard to her physical impairments, she did not reference Plaintiff's self-reports when opining that Plaintiff may have difficult responding to work-place changes, should not have trouble with awareness of hazards, can travel alone in unfamiliar places, and can set future goals and plan independently. *Id.* Accordingly, Dr. Walker's reliance on Plaintiff's

self-reports was a specific and legitimate reason, supported by substantial evidence, for discounting her opinion.

State agency consultant Dr. Comrie reviewed Plaintiff's medical record and opined Plaintiff could perform simple and well learned tasks in two-hour increments with scheduled breaks and would be expected to have occasional lapses in concentration and pace. AR at 107. Dr. Comrie also opined Plaintiff could interact with supervisors and coworkers but would need to work separately from the general public. *Id.* State agency consultant Dr. Menken opined Plaintiff remember and perform simple tasks with scheduled breaks and would be unable to perform work with the general public. As discussed above with regard to the ALJ's evaluation of Dr. Smith's opinions, the ALJ was required to not only identify conflicts between medical opinions, but also explain how he resolved such conflicts. Therefore, any inconsistency with the opinions of the State agency consultants was not a specific and legitimate reason for discounting Dr. Walker's opinion. However, any error is harmless given the other specific and legitimate reason provided by the ALJ for discounting Dr. Walker's opinion. *Carmickle,* 533 F.3d at 1165 (9th Cir. 2008). Accordingly, the ALJ did not err in evaluating Dr. Walker's opinion.

## V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the medical opinions of Drs. Bruce, Hoffman, and Smith.

Dated this 10th day of March, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge